IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 1, 2018

IN RE JEROMIA W.[1]

**Appeal from the Juvenile Court for Shelby County**
**No. CC7414      Harold W. Horne, Special Judge**

_____

**No. W2017-02529-COA-R3-PT**

_____

This action involves the termination of a father's parental rights to his minor child. Following a bench trial, the court found that clear and convincing evidence existed to support the statutory grounds of abandonment for failure to support and wanton disregard for the child's welfare; substantial noncompliance with the permanency plan; and failure to manifest an ability and willingness to personally assume responsibility for the child. The court further found that termination was in the best interest of the child. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and BRANDON O. GIBSON, J., joined.

Johnna I. Duke, Memphis, Tennessee, for the appellant, Jerone W.[2]

Herbert H. Slatery, III, Attorney General & Reporter, and Alexander S. Rieger, Deputy Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee, Department of Children's Services.

_____

[1] This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

[2] The father's name was spelled variously throughout the record. He confirmed at the hearing that his known alias is "Jerome" but that his legal name is "Jerone."

# OPINION

## I.     BACKGROUND

Jeromia W. ("the Child") was born to Jennifer S. ("Mother") and Jerone W. ("Father") in July 2015.  Mother and Father (collectively "the Parents") were not married; however, Father was listed on the birth certificate.  Mother tested positive for cocaine and marijuana upon admission to the hospital for the Child's birth.  The Child was born without complication; however, her umbilical cord tested positive for cocaine.  Mother was discharged from the hospital on July 31, while the Child remained in the hospital's care.  Mother did not return to visit and later reported that she was not prepared to care for the Child.  Father admitted that he would test positive for marijuana and refused to provide an address for his current residence.

The Child was placed in the temporary custody of the Tennessee Department of Children's Services ("DCS") on August 13, 2015.  The Child was placed in foster care and has remained there since that time.  She was later adjudicated as dependent and neglected on April 21, 2016, based upon drug exposure and Father's failure to make himself available as an appropriate caregiver.

DCS developed a permanency plan on September 25, 2015.  Pursuant to the plan, Father was required to (1) complete an alcohol and drug assessment and follow recommendations; (2) submit to random drug screens; (3) undergo parenting assessments and follow recommendations; (4) attend the Child's medical appointments; (5) obtain safe and stable housing; (6) remit child support; and (7) attend visitation for four hours per month.  Father received a copy of the plan but refused to sign at that time.[3]  This plan was ratified by the trial court.[4]  Father completed an alcohol and drug assessment as required but tested positive for marijuana on June 20, 2016.

At the time of the Child's birth, Father was on probation for aggravated burglary and theft of property convictions.  A warrant was issued for his arrest on April 13, 2016, and he was incarcerated for violating his probation on September 11, 2016, based upon his failure to report since November 2015 and failure to inform his probation officer of his change of residence.  He has been incarcerated since that time.

DCS filed a petition to terminate Father's parental rights on April 12, 2017, based upon the statutory grounds of abandonment for failure to support, to visit, and wanton

---

[3] He signed the plan and the Criteria and Procedures for Termination of Parental Rights in June 2016.

[4] A revised plan with the same requirements was also ratified by the trial court.

disregard for the child's welfare; substantial noncompliance with the permanency plan; and failure to manifest an ability and willingness to personally assume responsibility for the child.[5] The case proceeded to a hearing on November 30, 2017.

As pertinent to this appeal, Sharon Couch testified that she was assigned to the Child's case as the family services worker and confirmed that the Child has been in DCS custody since August 2015. She stated that Father's last visit with the Child prior to his incarceration was in May 2016. She agreed that he also visited with the Child at a foster care review board hearing on June 14, 2016. She claimed that he was "50/50" with his visitation prior to that time and explained that he rescheduled some visitations and cancelled others. She acknowledged that she had trouble locating Father after his incarceration due to a clerical error. She confirmed that visits have since resumed and that the Child has seen Father approximately three to four times since his incarceration. She noted that the Child recognizes him and will sit with him for a few moments before returning to the foster father.

Ms. Couch testified that Father did not provide any child support prior to his incarceration, despite his claims of employment. She confirmed that he completed an alcohol and drug assessment prior to his incarceration but claimed that he did not follow recommendations or comply with his other action steps prior to his incarceration. She stated that he has since completed parenting classes while incarcerated.

Ms. Couch stated that DCS pursued a relative placement for the Child but that DCS later deemed the suggested placement as unsuitable. She believed the Child was doing well in her foster home and exhibited a strong bond with her foster parents.

Mother testified that she would prefer Father or another relative to assume custody if her rights are terminated. Father claimed that he first learned of Mother's pregnancy in October 2014 and that he repeatedly advised Mother to quit using drugs while pregnant. He stated that he visited the Child the day after her birth and signed her birth certificate. He conceded that he failed to inform DCS of his location because he was in denial. He explained that he was in between relationships at the time and did not want to risk his relationship with his other child's mother. He later realized that he could not hide his paternity of the Child. He expressed love and concern for the Child and indicated that he would ready himself to care for her upon his release in May 2018.

Father testified that he visited the Child "pretty regular" until May or July 2016. He confirmed that he was employed from April through July 2016 at Sutton Moving ("Sutton") and that he operated a lawn service when he was not working for Sutton.

_____

[5] DCS also sought termination of Mother's parental rights, and her rights were ultimately terminated following the hearing. She did not appeal the court's decision and is not a party to this appeal.

While working for Sutton, he worked six days a week and made approximately $150 to $200 per day. He made approximately $300 to $350 per week with his lawn business. He claimed monthly expenses of $700 in rent and $300 in utilities. He conceded that he did not remit child support but claimed that he was unsure of his responsibilities pertaining to child support.

Father testified that he completed a number of programs while incarcerated and that he had also completed parenting classes and would receive a certificate indicating his completion. He claimed that he also passed all drug screens while incarcerated.

Foster Parents testified that the Child was doing well in their home. They expressed love and concern for her and indicated a desire to adopt her. Foster Father confirmed that Father provided food or candy during his visitation while incarcerated.

Following the hearing, the trial court granted the termination petition, sustaining each ground but abandonment for failure to visit. The court further found that termination was in the best interest of the Child. This timely appeal followed.

## II. ISSUES

We consolidate and restate the issues on appeal as follows:

A.      Whether clear and convincing evidence supports the court's termination based upon a finding of abandonment for failure to remit child support pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(iv).

B.      Whether clear and convincing evidence supports the court's termination based upon a finding of abandonment related to Father's conduct prior to incarceration pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(iv).

C.      Whether clear and convincing evidence supports the court's termination based upon a finding of substantial noncompliance with the permanency plan pursuant to Tennessee Code Annotated section 36-1-113(g)(2).

D.      Whether clear and convincing evidence supports the court's termination based upon a finding that Father failed to assume custody or financial responsibility pursuant to Tennessee Code Annotated section 36-1-113(g)(14).

- 4 -

E.      Whether clear and convincing evidence supports the court's finding that termination was in the best interest of the Child pursuant to Tennessee Code Annotated section 36-1-113(i).

## III.      STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

(1)      [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2)      [t]hat termination of the parent's or guardian's rights is in the best interest[] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620,

622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at \*9 (Tenn. Ct. App. Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2016, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016) (internal citations omitted).

## IV.   DISCUSSION

### A. & B.

Parental rights may be terminated if the parent has been incarcerated during all or part of the four months immediately preceding the filing of the termination petition *and* has either willfully failed to support the child for four consecutive months preceding the incarceration *or* has engaged in conduct prior to incarceration which exhibits a wanton disregard for the welfare of the child. Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(iv). Here, Father was incarcerated for the entirety of the four months

preceding the filing of the termination petition. The applicable four-month window was from May 11, 2016, through September 10, 2016.[6]

## 1.

A parent's willful failure to support "means the willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments toward the support of the child." Tenn. Code Ann. § 36-1-102(1)(D). Token support is "support, under the circumstances of the individual case, [that] is insignificant given the parent's means." Tenn. Code Ann. § 36-1-102(1)(B). This court has consistently held that the term willfulness as it applies to a party's failure to visit or remit support must contain the element of intent. *In re Swanson*, 2 S.W.3d 180, 188-89 (Tenn. 1999). The element of intent utilized in termination proceedings "does not require the same standard of culpability as is required by the penal code." *In re Audrey S.*, 182 S.W.3d at 863. "Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent." *Id.* "[A] person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing." *Id.* at 863-64.

Father admits his failure to remit support but claims that such failure was not willful when he was unsure of his responsibilities pertaining to child support. Father was advised of his obligation to remit support as evidenced by the parenting plans and his signing of the Criteria for Termination of Parental Rights. Furthermore, "[e]very parent who is eighteen (18) years of age or older is presumed to have knowledge of a parent's legal obligation to support such parent's child." Tenn. Code Ann. § 36-1-102(1)(H). "A parent's obligation to support his or her child exists regardless of a court order requiring the parent to pay support." *In re Jacob M.J.*, 434 S.W.3d 565, 572 (Tenn. Ct. App. 2013) (citation omitted). Accordingly, we conclude that there was clear and convincing evidence to establish that Father abandoned the Child by willfully failing to remit support during the relevant time period.

## 2.

Tennessee Code Annotated section 36-1-113(g)(1) provides that parental rights may be terminated where an incarcerated parent abandons a child by engaging in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child. *See*

---

[6] Father's period of incarceration prior to the filing of termination petition began on September 11, 2016. "The applicable four-month window . . . includes the four months preceding the day the petition to terminate parental rights is filed but excludes the day the petition is filed." *In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at *6 (Tenn. Ct. App. Feb. 20, 2014). We reason the same holds true for the start date of the parent's incarceration.

Tenn. Code Ann. § 36-1-102(1)(A)(iv). To prove this ground, DCS must establish that (1) Father was incarcerated at the time the termination petition was filed or within the preceding four-month period and that (2) he engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child. Tenn. Code Ann. § 36-1-102(1)(A)(iv); *In re Kason C.*, No. M2013-02624-COA-R3-PT, 2014 WL 2768003, *5 (Tenn. Ct. App. June 17, 2014). Parental conduct exhibiting wanton disregard for a child's welfare may occur at any time prior to incarceration and is not limited to acts occurring during the four-month period immediately preceding the incarceration. *State of Tenn., Dep't. of Children's Servs. v. Hood*, 338 S.W.3d 917, 926 (Tenn. Ct. App. 2009).

We have held on numerous occasions that "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *In re Audrey S.*, 182 S.W.3d at 867-68. Here, Father violated his probation, failed to remit child support, and expended minimal efforts on the other requirements in the permanency plan. However, the record reflects that Father attended visitation prior to his incarceration and that his probation was violated solely based upon his failure to report and inform his officer of his current address, conduct that is not particularly egregious or indicative of extensive criminal behavior. While we do not condone his behavior, we do not believe that the conduct at issue rises to the level of wanton disregard. Accordingly, we conclude that the record did not contain clear and convincing evidence to establish that Father abandoned the Child by engaging in conduct prior to incarceration that exhibited a wanton disregard for her welfare. This conclusion does not require reversal because only one statutory ground is required to support the termination of Father's rights. Tenn. Code Ann. § 36-1-113(c).

C.

Tennessee law requires the development of a plan of care for each foster child and further requires that the plan include parental responsibilities that are reasonably related to the plan's goal. Tenn. Code Ann. § 37-2-403(a)(2)(A). A ground for termination of parental rights exists when a petitioner proves by clear and convincing evidence that "[t]here has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan." Tenn. Code Ann. § 36-1-113(g)(2). To establish noncompliance, the trial court must initially find "that the requirements of the permanency plans are reasonable and related to remedying the conditions that caused the child to be removed from the parent's custody in the first place." *In re M.J.B.*, 140 S.W.3d at 656; *see In re Valentine*, 79 S.W.3d at 547. When the trial court does not make such findings, the appellate court should review the issue de novo. *In re Valentine*, 79 S.W.3d at 547. Second, the court must find that the parent's noncompliance is substantial, *In re M.J.B.*, 140 S.W.3d at 656, meaning that the parent must be in

"noncompliance with requirements in a permanency plan that are reasonable and related to remedying the conditions that warranted removing the child from the parent's custody." *In re Z.J.S.*, No. M2002-02235-COA-R3-JV, 2003 WL 21266854, at *12 (Tenn. Ct. App. June 3, 2003). To assess a parent's substantial noncompliance with a permanency plan, the court must weigh "both the degree of noncompliance and the weight assigned to that particular requirement." *Id.* at *12. Conversely, "[t]erms which are not reasonable and related are irrelevant, and substantial noncompliance with such terms is irrelevant." *In re Valentine*, 79 S.W.3d at 548-49.

Here, the permanency plans required Father to (1) complete an alcohol and drug assessment and follow recommendations; (2) submit to random drug screens; (3) undergo parenting assessments and follow recommendations; (4) attend the Child's medical appointments; (5) obtain safe and stable housing; (6) remit child support; and (7) attend visitation for four hours per month.[7] Father exhibited some compliance with the permanency plan requirements by completing an alcohol and drug assessment prior to his incarceration, attending parenting classes while incarcerated, and participating in visitation with the Child prior to and during his incarceration. While we commend Father for his efforts in also attending various programs to better himself while incarcerated, we cannot hold that his compliance with the permanency plan requirements was substantial. Father simply failed to complete the most important aspects of the plan that would have resulted in his ability to care for the Child, namely following the recommendations from his assessment and establishing safe and stable housing. He has yet to remit child support. With the above considerations in mind, we conclude that there was clear and convincing evidence to establish that Father failed to substantially comply with the requirements of the permanency plan.

D.

A parent's parental rights may be terminated when the parent has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child and when placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child. Tenn. Code Ann. § 36-1-113(g)(14).

Father asserts that he never said he would not take the Child and that he attempted to find a relative placement for her if DCS refused him as a possible placement. He further claims that he has since completed several programs while incarcerated to ready himself to care for the Child. The record reflects that Father failed to give DCS a valid

---

[7] Father claims that he never saw the initial permanency plan; however, his signature, dated June 2016, appears on the first plan. Further, he completed the alcohol and drug assessment pursuant to the requirements contained in the first plan.

address at the time of the Child's birth and that he even admitted his unwillingness to admit his paternity at first. Moreover, he failed to evidence any intent of reunification prior to his incarceration as evidenced by his violating his probation and failure to complete the majority of the permanency plan requirements. With these considerations in mind, we conclude that there was clear and convincing evidence to establish that Father failed to manifest an ability and willingness to assume custody of the Child and that her placement with him would pose a risk of substantial harm to her physical or psychological welfare as evidenced by his incarceration at the time of the hearing.

E.

Having concluded that there was clear and convincing evidence supporting at least one statutory ground of termination, we must consider whether termination was in the best interest of the Child. In making this determination, we are guided by the following non-exhaustive list of factors:

> (i) In determining whether termination of parental or guardianship rights is in the best interest of the child . . . the court shall consider, but is not limited to, the following:
>
> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;[8]
>
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
>
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
>
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

---

[8] *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015) ("[I]n a termination proceeding, the extent of DCS's efforts to reunify the family is weighed in the court's best-interest analysis, but proof of reasonable efforts is not a precondition to termination of the parental rights of the respondent parent.").

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to [section] 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also stated that "when the best interest[] of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interest[] of the child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); *see also White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (holding that when considering a child's best interest, the court must take the child's perspective, rather than the parent's).

Despite Father's completion of some programs while incarcerated, he has yet to establish an adjustment of circumstances necessary for the Child's return. Tenn. Code Ann. § 36-1-113(i)(1), (2). We further hold that DCS's efforts in this case were reasonable given Father's incarceration. While Father has engaged in visitation, the record reflects that he has yet to establish a meaningful relationship with the Child. Tenn. Code Ann. § 36-1-113(i)(4). Father was still incarcerated at the time of the hearing and had not established a home for the Child. Tenn. Code Ann. § 36-1-113(i)(7). He has also not remitted child support. Tenn. Code Ann. § 36-1-113(i)(9). Most importantly, a change of caretakers at this point in the Child's life would be detrimental to her emotional condition. Tenn. Code Ann. § 36-1-113(i)(5). The Child has been in her pre-

adoptive home for more than three years now and has bonded with her foster parents who wish to adopt her. She has simply languished in custody for far too long and should be allowed to achieve permanency and stability in her current placement. With all of the above considerations in mind, we conclude that there was clear and convincing evidence to establish that termination of Father's parental rights was in the best interest of the Child. We affirm the decision of the trial court.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Jerone W.

_____
JOHN W. McCLARTY, JUDGE